341 So.2d 1248 (1976)
Oleus TEMPLET, Jr., et al.
v.
GOODYEAR TIRE AND RUBBER COMPANY, INC., et al.
No. 11042.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Rehearing Denied February 14, 1977.
Writ Refused March 31, 1977.
*1249 Falterman & Joffrion, Steven Joffrion, Anthony G. Falterman, Pierre Part, for plaintiffs-appellants.
Charles J. LeBlanc, Thibodaux, for American Employers Ins. Co., defendants-appellees.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
COVINGTON, Judge.
Plaintiffs, Oleus Templet, Jr. and Dorothy T. Templet, individually and as the Administrators of the Estate of their minor son, Chris Paul Templet, deceased, seek damages for the death of their son, who was allegedly fatally injured when a tire, which he was mounting, blew off the rim. Suit was brought against the manufacturer of the tire, Goodyear Tire and Rubber Company, Inc.; the seller of the tire, Gaubert's Great Southern Tire Company, Inc.; the manufacturer of the rim, Southern Wheel and Rim, Inc.; the seller of the rim, Labadieville Machinery Company, Inc.; the liability insurer of Labadieville Machinery, American Employers' Insurance Company; and the liability insurer of Gaubert, Ranger Insurance Company of New York. Other parties were made alternative defendants and third-party defendants by subsequent pleadings; however, a discussion of their roles is not pertinent at this stage of the proceedings.
Labadieville Machinery's insurer, American Employers' Insurance Company, filed a motion for summary judgment on the grounds that it afforded no coverage since its insurance policy excludes products liability and completed operations hazards. From a judgment granting this motion and dismissing plaintiffs' suit against American Employers, the plaintiffs appealed.
Plaintiffs' petition alleges the following facts: The deceased, 16 years old, was engaged in mounting a Goodyear tire on a deep-well rim sold by Labadieville Machinery when the tire blew off the rim, fatally injuring him. The alleged acts of negligence of Labadieville Machinery are the improper mounting of the rim on the hub of the rim, improperly covering the stem hole of the rim and making a hole on the wrong side of the rim, and failing to warn of the dangers involved in the mounting of a tire.
The defendant insurer, American Employers' Insurance Company, filed a motion for summary judgment on the ground that its insurance policy excludes products liability and completed operations hazards, and therefore excludes coverage of the damages sought.
A copy of the insurance policy attached to the motion for summary judgment contains an endorsement which states: "This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: COMPREHENSIVE GENERAL LIABILITY INSURANCE
"It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the COMPLETED OPERATIONS HAZARD or the PRODUCTS HAZARD."
The policy defines "completed operations hazard" as including "bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to *1250 the named insured. `Operations' include materials, parts or equipment furnished in connection therewith."
The policy defines "products hazard" as including "bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."
We do not agree entirely with the Trial Judge that summary judgment should have been granted. As to the allegations of negligence concerning the improper mounting of the rim on the hub and improperly covering the stem hole of the rim, we do agree that these alleged acts of negligence fall within the exclusionary language of the insurance policy, and thus there is no coverage and summary judgment should have been granted. However, we conclude that the allegation of negligence of failing to warn of the danger involved in mounting a tire from the wrong side of the rim does not fall within the exclusionary language, but rather is covered by the general liability portion of the policy, and thus there is coverage.
We are of the opinion that this situation is most similar and controlled by the case of Cooling v. United States Fidelity and Guaranty Co., 269 So.2d 294 (La.App. 3rd Cir. 1972), writ refused 272 So.2d 373 (1973).
In Cooling the seller had sold diesel engines to the employer of the injured employee and was familiar with the uses and conditions under which the engines were to be operated. The seller knew the particular engine was to be used in oil field operations and should have warned the buyer-employer to install a flame-arresting muffler and other safety devices to protect against igniting fumes. A fire occurred when gas fumes which had accumulated in the area were ignited by the diesel engine. The seller's insurer refused to defend on the grounds that this was a completed operations hazard, which was excluded under the policy.
In affirming the Trial Court's holding that there was coverage, and thus the insurer owed a defense, the Court in part said:
"The policy coverage language and particularly the products hazard and completed operations hazard exclusions form the basis of defendant's justification for its refusal to assume Cooling's legal defense. The policy contains no express exclusion of coverage for injuries arising out of a failure to warn where there is no affirmative duty to warn.
"The question is whether plaintiff's alleged negligence is included within the exclusions. U.S.F. & G. contends that Cooling's failure to warn was part of his sale of a product and the exclusion applies. Defendant acknowledges that the products hazard and the completed operations hazard have been interpreted by the courts to apply only to injuries arising out of the sale or manufacture of products as opposed to those arising out of the performance of services. This distinction has resulted, says defendant, in holding that an insured with a policy containing the exclusionary clauses mentioned, who is sued for alleged negligence in performing a service is covered under the policy, notwithstanding the exclusions; whereas one sued for negligence resulting from the sale of products is not covered. Swillie v. General Motors Corporation, 133 So.2d 813 (La.App. 3 Cir. 1961); American Insurance Co. v. Hartford Accident and Indemnity Company, 198 So.2d 757 (La.App. 1 Cir. 1967).
"We agree with the stated proposition, but we differ with the conclusion that because Cooling has been sued and because he has sold a product, it necessarily follows that the alleged negligence is part of the sale. The syllogism merely begs the question of coverage vel non. "We find as did the trial court, that the alleged negligence under the peculiar facts of this case wherein there is neither a defective product sold nor faulty workmanship *1251 involved, is of a nature other than either sale or service as characterized by defendant. It is rather in the nature of a general risk of doing business which is the sort of risk which motivated Cooling to buy comprehensive liability insurance.
"Because the insurer has the duty to clearly define its obligation and because it is an established rule of law that ambiguities in an insurance policy are construed against the insurer, we hold that the exclusions do not specifically exclude coverage to Cooling under the peculiar factual situation presented.
* * * * * *
"The parties intended that the exclusions would apply to coverage for injuries received as a result of the sale of defective products or as a result of negligence in positive representations or warranties. This construction is supported by the cases cited by U.S.F. & G. for the proposition that the exclusions apply to Cooling because his alleged negligence was a part of a sale of products. All but one of the cited cases are distinguished from the case at bar either on the basis of the presence of defects in the products sold or by tortious positive representations or warranties, neither of which is present in this case.
"The definitions of products hazard and completed operations hazard do not mention omissions or failure to warn when there is no affirmative duty to do so. The definitions of products hazard and completed operations hazard do include injuries arising out of representations or warranties. But the converse, the failure to represent is not included in these definitions. If the parties intended to limit the liability of the insurer by excluding coverage for omissions and failure to warn when there is no affirmative duty to warn, the insurer could have so provided.
"Inasmuch as the insurer has the duty to express clearly his obligation, Kendrick, supra, [Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958)], and also because ambiguities are to be construed against the insurer, Albritton, supra [Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1953)], we hold that the intent of the parties as evidenced by the language of the exclusions as well as by the failure of insurer to expressly limit its liability to exclude coverage for torts of omission or failure to warn is to include such coverage. LSA-C.C. Arts. 1947, 1957; Seguin v. Continental Service Life & Health Ins. Co., 230 La. 533, 89 So.2d 113 (1956), 55 A.L.R. 1014; Conner v. Motors Insurance Corporation, 216 So.2d 555 (La.App. 3 Cir. 1968).
* * * * * *
"Insurer suggests that groundless claims however tenuous should result in non-coverage if they can be tied in, however indirectly with the sale of a product. This contention crystalizes the insured's dilemma. His intent in purchasing a comprehensive liability policy was to protect himself against both substantial lawsuits and the harassment of lawsuits based on obviously groundless claims. The policy provides for a defense and the exclusions do not specifically delete the alleged negligence for which Cooling needed a defense."
Appellee-insurer argues that Cooling is not controlling because it dealt with attorney fees and the duty to defend, and has been distinguished as such in Mut v. Newark Insurance Co., 289 So.2d 237 (La.App. 1st Cir. 1974), writ refused, 290 So.2d 910 (1974); Meier v. Hardware Mutual Casualty Co., 281 So.2d 793 (La.App. 3rd Cir. 1973); and Oceanonics, Inc. v. Petroleum Distributing Co., 280 So.2d 874 (La.App. 3rd Cir. 1973), affirmed 292 So.2d 190 (La.1974).
We disagree for in each of these three cases cited by appellee, Mut, a defective wall, Meier, a defective gin pole, and Oceanonics, a defective weld on a boom, a defect existed which caused the injury, and thus, these cases are not controlling.
Limiting ourselves only to the question of whether there is insurance coverage, and conceding arguendo that there is no defect in the rim, then the only way that there *1252 could be liability on the part of the defendant-insured is for its failure to warn. As noted in Cooling, the policy in question does not exclude the failure to warn of a danger. Therefore, as did our brethren on the Third Circuit, we must conclude that as to the allegation of negligence as to the failure to warn, there is insurance coverage.
Lastly, we cannot say nor agree that simply because plaintiff has cumulated various allegations of negligence on the part of the defendant-insured that these various allegations cannot be separated and looked at individually. In two of the allegations it is alleged that the defendant either improperly mounted the rim on the hub or that it improperly covered a valve stem hole, whereas the third allegation of negligence contends that the defendant failed to warn of a danger in mounting a tire from the wrong side of the rim.
Therefore, for the above and foregoing reasons the judgment of the Trial Court is affirmed insofar as same holds that there is no insurance coverage afforded by American Employers' Insurance Company for and on behalf of Labadieville Machinery Company as to the first two allegations of negligence, and the judgment of the Trial Court is reversed in holding that there is no insurance coverage by American Employers' Insurance Company for and on behalf of Labadieville Machinery Company as to the allegation of negligence of the failure to warn of the danger of mounting the tire from the wrong side. This matter is remanded for further proceedings in accordance with the views expressed herein. All costs of this appeal are to be paid by defendant-appellee.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.